**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL ACTION NO. 1:22-CR-429-MLB-CCB** |
| **QUINTON MATTHEWS,** | |
| **Defendant.** | |

## FINAL REPORT AND RECOMMENDATION

Defendant Quinton Matthews is charged with seven robberies in violation of the Hobbs Act, 18 U.S.C. § 1951 (Counts 1, 3, 5, 7, 9, 11, and 13). (Doc. 1). Each robbery count is accompanied by a corresponding count charging Defendant with brandishing a firearm during and in relation to the relevant robbery, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(A)(ii) (Counts 2, 4, 6, 8, 10, 12, and 14). *Id.* Defendant moves to dismiss the Section 924(c) counts, arguing that Hobbs Act robbery does not constitute a crime of violence. (Doc. 23). He also seeks to suppress evidence the Government obtained as a result of a geofence warrant, (Doc. 24), and to suppress evidence received pursuant to a tower-dump order issued under 18 U.S.C. § 2703(d), (Doc. 25). The Government filed an omnibus response to all three

motions, (Doc. 27), and Defendant filed a reply, (Doc. 31). Each motion is now ripe for resolution, and I will address them in turn.

## I.     Motion to Dismiss the 924(c) Counts

Section 924(c) makes it a crime to, among other things, use or carry a firearm during and in relation to any crime of violence or drug trafficking crime. 18 U.S.C. § 924(c)(1)(A). Defendant seeks to dismiss all of the 924(c) counts in the indictment, arguing that Hobbs Act robbery (the predicate crime in all of the odd-numbered counts) is no longer a crime of violence following the Supreme Court's opinion in *Taylor v. United States*, 142 S. Ct. 2015 (2022). (Doc. 23). In *Taylor*, the Court held that *attempted* Hobbs Act robbery does not qualify as a crime of violence under the elements clause of 18 U.S.C. § 924(c)(3)(A). 142 S. Ct. at 2020–21. And Defendant argues that, after *Taylor*, prior Eleventh Circuit precedent holding that *substantive* Hobbs Act robbery qualifies as a crime of violence is no longer good law. (Doc. 23 at 1 (citing *United States v. St. Hubert*, 909 F.3d 335 (11th Cir. 2018) and *In re St. Fleur*, 824 F.3d 1337 (11th Cir. 2016)).

Only days after Defendant filed the motion to dismiss, the Eleventh Circuit rejected his argument, holding that "*Taylor* did not disturb our holding that completed Hobbs Act robbery is a crime of violence." *United States v. Wiley*, 78 F.4th 1355, 1365 (11th Cir. 2023). And Defendant acknowledges as much in his

2

reply brief, noting that he maintains his motion simply to preserve the issue for further review by the Eleventh Circuit sitting *en banc* or by the Supreme Court. (Doc. 31 at 2). This Court is bound by *St. Fleur*, *St. Hubert*, and *Wiley*—all of which hold that Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A)—and, as such, Defendant's motion to dismiss the § 924(c) counts should be **DENIED**.[1]

## II. Motion to Suppress Evidence Obtained Pursuant to a Geofence Warrant

Defendant moves to suppress evidence that the Government obtained pursuant to a geofence warrant issued by this Court on February 24, 2021. (Doc. 24). In response, the Government states that it will not use evidence obtained from the warrant in its case-in-chief, and it does not further address the motion on the merits. (Doc. 27 at 2 n.1). Defendant does not mention the motion in his reply. (Doc. 31). Given the Government's representation that it will not use evidence obtained from the warrant in its case-in-chief, Defendant's motion to suppress, (Doc. 24), should be **DENIED AS MOOT**.

---

[1] Given the Eleventh Circuit's opinion in *Wiley*, I do not address Defendant's arguments to the contrary in any detail. It is enough to simply note that this Court is bound by the Circuit's decision.

### III.    Motion to Suppress Tower-Dump Information

Defendant moves to suppress tower-dump evidence that the Government obtained pursuant to an order issued by this Court on February 24, 2021. (Doc. 25). Under the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*, a "governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber . . . or customer of such service (not including the contents of communications" when the government "obtains a court order for such disclosure." 18 U.S.C. § 2703(c)(1)(B). A court shall issue such order "if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

The Government submitted a "tower-dump" application on February 24, 2021. (Doc. 27-1). The application stated that the Government was investigating seven robberies that occurred between January 10 and February 8 of 2021, all at different Family Dollar or Dollar General retail locations in the Atlanta area. *Id.* at 4–10. The application highlights many similarities between the (at that time unidentified) perpetrator of each robbery. The person was a black male who wore

4

a dark colored Adidas track suit (six of the robberies) or blue jean pants and a jacket (one of the robberies). *Id.* He wore a dark cap (five of the robberies) and occasionally wore a face mask (three of the robberies). *Id.* And the robber's modus operandi was similar in each of the robberies—he would approach the cashier and demand money or ask the cashier to summon the manager, from whom he would then demand money. *Id.* Moreover, the robber was armed with a gun (frequently described as a handgun or a black handgun) in each of the robberies. *Id.*

After describing the seven robberies, the application goes on to state that cell tower records "are likely relevant and material to the [FBI's] criminal investigation as the requested records will help the [FBI] to identify any wireless device/s used by the unknown perpetrator during the above-described criminal conduct. After all, it is likely that a perpetrator of the crime was present at [the location of the robberies] and was carrying and using a cell phone/s. As it follows, it is likely that the perpetrator's cell phones communicated with cell towers in the vicinity of the crime and obtaining such cell tower information will likely assist the [FBI] to determine who was present (or absent) during the commission of the crime discussed above." *Id.* at 10.

The application requested that several cellular service providers be required to disclose information for the cell tower(s) that provided cellular service to the

robbery locations for a 75-minute period around the time of each robbery. (Doc. 27-1 at 10–11).[2] The requested information included:

- The telephone call number and unique identifiers for each wireless device in the vicinity of the tower that registered with the tower;

- The source and destination telephone numbers associated with each call, text message, or data transmission;

- The date, time, and duration of each communication;

- The "sectors" (or tower face) that received a signal from the device; and

- The type of communication or transmission transmitted through the tower (for example, a phone call, data transmission, or text message).

*Id.* at 11–12. In short, the Government sought the phone numbers for the cellular devices that registered with the cell tower closest to each of the robbery locations for a period of 75-minutes around the time of each robbery. I issued an order under 18 U.S.C. § 2703(d) on February 24, 2021, granting the Government's application and requiring the service providers to disclose the information the Government requested. *Id.* at 15–18.

---

[2] The Government requested information related to the third robbery, which occurred on January 16, 2021, for a period of only 65 minutes. (Doc. 27-1 at 11).

Defendant seeks to suppress the information the Government received as a result of the tower-dump order. (Doc. 25). He argues that following the Supreme Court's opinion in *Carpenter v. United States*, 138 S. Ct. 2206, 2223 (2018), the data the Government received could only be obtained through a search warrant supported by probable cause, and not through a § 2703(d) order. (Doc. 25 at 3–4). He also maintains that even if an order was appropriate, the one issued here was overbroad because the application provided no nexus between the cell phone information and the crimes. *Id.* at 5. The Government responded, arguing that a § 2703(d) order is appropriate for the cell-tower information at issue, that the application in this case was sufficient, and that, regardless, even if there were any deficiencies, nothing should be suppressed because the Government relied on the order in good faith. (Doc. 27 at 5–12). Defendant filed a reply, (Doc. 31), and the matter is now ripe for resolution.

### A. A Search Warrant Was Not Required

Defendant relies on *Carpenter* to argue that Government could receive the cell-tower information only pursuant to a search warrant supported by probable cause—and not under a § 2703(d) order. This argument has been rejected in at least two other cases in this court, and I borrow liberally from the structure and reasoning of those orders below, both of which I find persuasive. *See United States*

7

*v. Manning*, No. 1:19-CR-376-TWT-RGV, 2021 WL 5236660, at *4–7 (N.D. Ga. Aug. 20, 2021), *adopted by* 2021 WL 5280567 (N.D. Ga. Nov. 12, 2021); *United States v. Rhodes*, No. 1:19-CR-73-AT-LTW, 2020 WL 9461131, at *2–4 (N.D. Ga. June 18, 2020), *adopted by* 2021 WL 1541050 (N.D. Ga. Apr. 20, 2021).

In *Carpenter*, the Supreme Court held that a search warrant was required for "historical cell phone records that provide a comprehensive chronicle of the user's past movements." 138 S. Ct. at 2211. In that case, the Government obtained cell-site data for a particular phone number that allowed it to historically track the location of that phone over a four-month period during which nine robberies had occurred. *Id.* at 2212. All told, the Government obtained 12,898 location points cataloging the user's movements over time—an average of 101 data points per day. *Id.*

The Court held that the data amounted to a search under the Fourth Amendment because it provided an "all-encompassing record" of the user's whereabouts—"revealing not only his particular movements, but through them his familial, political, professional, religious, and sexual associations." *Id.* at 2217 (internal quotation marks omitted). The Court noted that cell-site information "tracks nearly exactly the movements of [the phone's] owner[,]" *id.* at 2218, and held that "an individual maintains a legitimate expectation of privacy in the record

8

of his physical movements as captured through [cell site location information]." *Id.* at 2217. And the Court was careful to describe its opinion as "a narrow one" — expressly declining to "express a view" on tower dumps. *Id.* at 2220; *see also United States v. Adkinson*, 916 F.3d 605, 611 (7th Cir. 2019) (noting that *Carpenter* "did not invalidate warrantless tower dumps (which identified phones near *one location* (the victim stores) at *one time* (during the robberies)) because the Supreme Court declined to rule that these dumps were searches requiring warrants").

The information revealed by the tower dumps in this case (the identification of the particular phones present near a particular tower for a particular 75-minute period surrounding each robbery) "does not present the Fourth Amendment concerns present in *Carpenter*." *Rhodes*, 2020 WL 9461131, at *3. This is so because the information obtained from a tower dump does not contain the type of precise location-tracking data that the Supreme Court held in *Carpenter* is subject to an individual's legitimate expectation of privacy. *See United States v. Jenkins*, No. 1:18-CR-181-MLB-CMS, 2019 WL 1568154, at *4 (N.D. Ga. Apr. 11, 2019) (addressing user, subscriber, and location information obtained without a warrant from Comcast Cable, Sprint Corporation, and Kik Interactive, Inc.); *Rhodes*, 2020 WL 9461131, at *3 (noting that tower-dump information is "necessarily limited by the physical location of each particular tower" and does not track a person's

movements "over an extended period of time"). The information does not show, for example, Defendant's movement with near "GPS-level precision," 138 S. Ct. at 2219, it does not show or track his movements from a public place "into private residences, doctor's offices, political headquarters, and other potentially revealing locales," *id.* at 2218, and it does not enable the Government to obtain "near perfect surveillance, as if it had attached an ankle monitor to the phone's user," *id.*; *see also Jenkins*, 2019 WL 1568154, at *4 (same, as applied to the subscriber information described above); *Manning*, 2021 WL 5236660, at *6 (same, as applied to tower-dump information). Simply put, the rationale for finding a Fourth Amendment search in *Carpenter*—where the Court's concern centered around data that enabled the government to track a person over a lengthy period—does not apply to the single-moment-in-time information obtained from the tower dumps in this case. *Manning*, 2021 WL 5236660, at *5–6; *Rhodes*, 2020 WL 9461131, at *3.

Defendant argues that the privacy interests implicated by a tower dump are actually *greater* than those present in *Carpenter* because a tower dump allows the Government to collect location information for not only the suspect, but for an "unknown number of innocent Americans" who also happened to be in the

vicinity of one of the stores around the time of one of the robberies. (Doc. 31 at 3).[3]

I disagree. The Fourth Amendment implications in *Carpenter* related to the Government's ability to track a particular person over a lengthy period. The Court did not "call into question conventional surveillance techniques and tools, such as security cameras," did not "address other business records that might incidentally reveal location information," and did not "express a view" on tower dumps. *Carpenter*, 138 S. Ct. at 2220. Nothing in *Carpenter* suggests that collecting information related to a number of phones, all present at a particular location at a particular time, implicates a search for purposes of the Fourth Amendment. The moment-in-time nature of the information gleaned from a tower dump—even if for a number of irrelevant phones—fits squarely within what *Carpenter* expressly *did not* address and squarely outside of what it *did* address. "Because the information obtained by the Government in this case does not implicate the kinds of privacy concerns present in *Carpenter*, and because Defendant cites to no other

---

[3] The Government responds that Defendant does not "have standing to challenge the collection of his information based on the privacy interests of other individuals." (Doc. 27 at 10). Because information related to Defendant's phone was included in the data the Government received, and because there is no suggestion that he does not have standing to challenge the introduction of the evidence pertaining to his phone, I decline to further address whether Defendant has standing to seek to suppress the information the Government received that is unrelated to his phone.

binding authority holding that a warrantless tower dump violates the Fourth Amendment, the Court concludes that the § 2703(d) Order was a valid mechanism for the Government to obtain the information at issue." *Rhodes*, 2020 WL 9461131, at *3.[4]

### B. The Section 2703(d) Order Was Not Overbroad

Defendant suggests that the § 2703(d) order was overbroad because it contained no nexus between any phone and the crimes at issue. (Doc. 25 at 5). He notes that nothing in the application suggests that anyone saw the robber holding or using a phone, nor was there any footage showing a phone at the scene of the crimes. *Id.*

---

[4] Defendant cites to *In re Search of Cellular Telephone Towers*, 945 F. Supp. 2d 769, 770 (S.D. Tex. 2013), where a magistrate judge in the Southern District of Texas held that § 2703(d) does not cover tower dumps. (Doc. 31 at 5); *see also In re United States ex rel. Order Pursuant to 18 U.S.C. Section 2703(d)*, 930 F. Supp. 2d 698, 701 (S.D. Tex. 2012) (a prior order in the same case holding that all "cell site data are protected pursuant to the Fourth Amendment from warrantless searches"). I am not persuaded. Notably, those orders predate the Court's opinion in *Carpenter*. If, as those orders suggest, all cell site data is protected by the Fourth Amendment, a good bit of the Supreme Court's analysis in *Carpenter* would have been unnecessary. The Court could have simply said that. Instead, it went to great pains to explain why the information at issue in *Carpenter*—data tracking the movement of a person over a lengthy period—did amount to a Fourth Amendment search, all while expressly declining to include in its analysis other types of location information (including tower dumps). The orders from this court in *Manning* and *Rhodes*, which had the benefit of *Carpenter*, are more persuasive.

The application states that the cell tower records "are likely relevant and material to the [FBI's] criminal investigation as the requested records will help the [FBI] to identify any wireless device/s used by the unknown perpetrator during the above-described criminal conduct." (Doc. 27-1 at 10). And, the application notes, "it is likely that a perpetrator of the crime was present at [the location of the robberies] and was carrying and using a cell phone/s. As it follows, it is likely that the perpetrator's cell phones communicated with cell towers in the vicinity of the crime and obtaining such cell tower information will likely assist the [FBI] to determine who was present (or absent) during the commission of the crime discussed above." *Id.*

As the court concluded in *Rhodes*, there is simply nothing in § 2703(d) requiring the Government to show that a phone was present at the scene before it can obtain a tower-dump order. 2022 WL 9461131, at *3. The statute requires only "specific and articulable facts showing that there are *reasonable grounds* to believe that the contents of a wire or electronic communication, or the records or other information sought, are *relevant and material* to an ongoing criminal investigation." 18 U.S.C. § 2703(d) (emphasis added). The application here sets forth the facts of the robberies in detail, all of which reasonably suggest that a particular person may have been responsible for all (or at least some) of the crimes. It further

explains that it is likely that the perpetrator was present at the scene of the robberies, that it is likely that such person was carrying a phone, and that as a result, the information would assist the FBI in identifying a common phone present at some or all of the robberies. (Doc. 27-1 at 10). That was enough to provide "reasonable grounds" to believe that the cell-tower information would be "relevant and material" to the investigation. 18 U.S.C. § 2703(d). And to the extent that Defendant argues the application needed to do more to establish that the perpetrator was likely to have a cell phone on him, (Doc. 31 at 5), I disagree. As the Supreme Court has recognized, cell phones are now a "pervasive and insistent part of daily life" and "carrying one is indispensable to participation in modern society." *Carpenter*, 138 S. Ct. at 2220 (internal quotation marks omitted). The statement in the application that the perpetrator was likely carrying a cell phone was a reasonable one that need not have been supported by "statistics or real evidence," as Defendant suggests. (Doc. 31 at 5). All told, the specific and articulable facts in the application were sufficient for the Court to find reasonable grounds that the information would be relevant to the Government's investigation.

14

### C. **The *Leon* Good Faith Doctrine Applies**

Even if a search warrant was required, or even if the order was otherwise deficient, Defendant would not be entitled to have the information suppressed because the Government relied on the Court's order in good faith.

In *United States v. Leon*, the Supreme Court held that the exclusionary rule should not bar the use of evidence "obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." 468 U.S. 897, 900, 922 (1984). The good-faith exception applies in all but four circumstances:

> (1) where the magistrate judge was misled by information in a warrant application that the applicant knew was false or would have known was false but for a reckless disregard of the truth; (2) where the magistrate "wholly abandoned" her judicial role; (3) where the affidavit supporting the warrant application was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) where the warrant was "so facially deficient" that officers couldn't have reasonably presumed it to be valid.

*United States v. Taylor*, 935 F.3d 1279, 1291 (11th Cir. 2019) (quoting *Leon*, 468 U.S. at 923). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Taxacher*, 902 F.2d 867, 871 (11th Cir. 1990) (internal quotation marks omitted).

15

And *Leon* has "been extended to situations where officers are called upon to interpret or rely upon an external source of authority such as a statute, which later turns out to be invalid or not to authorize the action taken, or where officers have based their conduct on recognized exceptions to the warrant requirement itself, such as consent." *United States v. Gonzalez*, 969 F.2d 999, 1004 n.7 (11th Cir. 1992) (citations omitted). Indeed, the Eleventh Circuit has applied *Leon* in the context of cell-site records obtained pursuant to a § 2703(d) order that, after *Carpenter*, should have been procured with a search warrant. *See United States v. Joyner*, 899 F.3d 1199, 1204–05 (11th Cir. 2018). As such, I agree with order issued in *Manning*, where the court concluded that the good-faith doctrine is applicable to orders obtained under § 2703(d). *Manning*, 2021 WL 5236660, at *7.[5]

In this case, there is nothing to suggest that any of the four *Leon* exceptions apply. More particularly, there is nothing to suggest: (1) that the Court was misled by information in the application that the Government knew was false, (2) that the Court wholly abandoned its judicial role in issuing the order, (3) that the application was so lacking in facts so as to render it entirely unreasonable, or (4) that the order was so facially deficient that officers could not reasonably presume

---

[5] The issue was not fully briefed in *Rhodes*, but the court nevertheless noted that the good-faith exception would likely apply. 2020 WL 9461131, at *4 n.4.

it to be valid. And Defendant does not argue to the contrary. Accordingly, in the absence of binding authority applying *Carpenter* to tower dumps, even if obtaining the information by court order was contrary to the Fourth Amendment, the good-faith exception applies, and the evidence obtained from the tower-dump order should not be suppressed. *See Manning*, 2021 WL 5236660, at *7.

For all the reasons stated above, Defendant's motion to suppress the information received from the § 2703(d) tower-dump order, (Doc. 25), should be **DENIED**.

## III.   Conclusion

In sum, I **RECOMMEND** that Defendant's motion to dismiss the § 924(c) counts, (Doc. 23), be **DENIED**; that Defendant's motion to suppress evidence from a geofence warrant, (Doc. 24), be **DENIED AS MOOT**; and that Defendant's motion to suppress evidence obtained from the tower-dump order, (Doc. 25), be **DENIED**. There are no other pretrial matters pending before the undersigned, and this case is **CERTIFIED READY FOR TRIAL**.

**IT IS SO RECOMMENDED,** this 29th day of December, 2023.

_____
CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE