IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

United States of America,

v.                                           Case No. 1:22-cr-429-MLB

Quinton Matthews,

             Defendant.

_____/

## ORDER

A grand jury indicted Defendant, charging him with seven counts of robbery in violation of the Hobbs Act and seven corresponding counts of brandishing a firearm during and in relation to each robbery. (Dkt. 1.) Defendant moves: (1) to dismiss the firearm counts, (2) to suppress evidence the United States obtained from a geofence warrant, and (3) to suppress evidence the United States obtained from so-called "cell tower dumps" without a warrant. (Dkts. 23; 24; 25.) Magistrate Judge Christopher C. Bly issued a Final Report and Recommendation (R&R) saying this Court should deny all Defendant's motions. (Dkt. 33.) Defendant objects only to the Magistrate Judge's conclusions regarding

1

the motion to dismiss and the motion to suppress the cell tower dump orders. (Dkt. 37.) The Court adopts the R&R.

## I. Standard

28 U.S.C. § 636(b)(1) requires district courts to "make a de novo determination of those portions of [an R&R] to which objection is made." Any such objection "must specifically identify the portions of the [R&R] to which objection is made and the specific basis for objection." *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 694 (11th Cir. 2020)[1]; *see United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) ("[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with."). "Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988).

"It does not appear that Congress intended to require district court

---

[1] The Court recognizes *McCullars* is unpublished and not binding. The Court cites it and other unpublished cases as instructive, nonetheless. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  And, in most cases, "[a] party failing to object to [an R&R] waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *McGriff v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 469, 472 (11th Cir. 2016).  Ultimately, whether or not objections are filed, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

## II.  Motion to Dismiss the Firearm Counts

Defendant moves to dismiss seven counts charging him (under 18 U.S.C. § 924) with brandishing a firearm during and in relation to crimes of violence—specifically, brandishing guns during seven different robberies the United States charged as violations of the Hobbs Act.  (Dkt. 23.)  He argues a completed Hobbs Act robbery is not a predicate crime of violence that can support a conviction under 18 U.S.C. § 924.  (*Id.*) Days after Defendant filed his motion, the Eleventh Circuit "rejected his argument, holding that . . . 'completed Hobbs Act robbery is a crime of violence.'"  (Dkt. 33 at 2 (quoting *United States v. Wiley,* 78 F.4th 1355,

3

1365 (11th Cir. 2023).) Based on *Wiley*, the Magistrate Judge concluded Defendant's argument fails. (Dkt. 33 at 2–3.) Defendant objects—conceding *Wiley* precludes his argument but maintaining his motion "to preserve the issue for potential review by the *en banc* Eleventh Circuit or the Supreme Court." (Dkt. 37 at 1.) He says he "will not repeat the arguments laid out in his original motion to dismiss," but "does not abandon those arguments and incorporates them herein to preserve his arguments for appeal." (Dkt. 37 at 2.)

Defendant fails to adequately object to the Magistrate Judge's conclusion. As already explained, a party objecting to an R&R must "specifically identify the portions of the [R&R] to which objection is made and the specific basis for objection." *McCullars*, 825 F. App'x at 694. "Thus, when a party merely makes general objections, 'such as incorporating by reference other arguments made in prior briefs,' the objecting party 'does not receive a de novo review.'" *Godwin v. Comm'r of Soc. Sec.*, 2017 WL 11113200, at *1 (M.D. Fla. Sept. 27, 2017) (quoting *Summerall v. Astrue*, 2011 WL 1259705, at *1 (M.D. Fla. Mar. 31, 2011)). And assuming the Court even needs to conduct a review for clear error, the Court sees none in the Magistrate Judge's conclusion. So, it denies

4

Defendant's motion to dismiss.

## III. Motion to Suppress

Defendant also seeks to suppress cell tower usage information the United States obtained from cell tower dump orders issued pursuant 18 U.S.C. § 2703(d) rather than through a search warrant. (Dkt. 25.) The Magistrate Judge concluded (1) the United States did not need a search warrant to obtain the cell tower information, (2) the § 2703(d) order was not overbroad, and (3) the United States relied on the § 2703(d) order in good faith. (Dkt. 33 at 7–17.) Defendant objects, saying (1) the United States needed a warrant to obtain the information given its breadth, (2) the United States's application for the § 2703(d) order did not contain specific and articulable facts to support the Court's issuing its order, and (3) the good-faith exception does not apply. (Dkt. 37 at 2–4.)

Under 18 U.S.C. § 2703(c)(1)(B), a "governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications)" when that entity "obtains a court order for such disclosure." A court may issue such an order "if the governmental entity

5

offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

The United States Attorney applied to a magistrate judge for a § 2703 order. (Dkt. 27-1.) The application said the FBI was investigating seven robberies that occurred in January and February of that year, all at different dollar stores in the Atlanta area. (Dkt. 27-1 at 4–10.) It highlighted similarities between the perpetrator of each robbery, including that: the person was a black male who wore a dark-colored Adidas track suit (in six of the robberies) or blue jean pants and a jacket (in one of the robberies); he wore a dark cap (in five of the robberies) and occasionally wore a face mask (in three of the robberies); during each robbery, he would approach the cashier and demand money or ask the cashier to get the manager from whom he would then demand money; and in each robbery, he was armed with a gun (frequently described as a handgun or black handgun). (*Id.*)

After describing the seven robberies in detail, the application explained:

6

> [T]he requested cell tower records are likely relevant and material to the [FBI's] criminal investigation as the requested records will help the [FBI] to identify any wireless device/s used by the unknown perpetrator during the above-described criminal conduct. After all, it is likely that a perpetrator of the crime was present at the [locations of the robberies] and was carrying and using a cell phone/s. As it follows, it is likely that the perpetrator's cell phones communicated with cell towers in the vicinity of the crime[s] and obtaining such cell tower information will likely assist the [FBI] to determine who was present (or absent) during the commission of the crime[s.]

(Dkt. 27-1 at 10.)

The United States sought the phone numbers for the cellular devices that registered with the cell tower closest to each of the robbery locations for a period of 75 minutes (or, for one robbery, 65 minutes) around the time of each robbery. (Dkt. 27-1 at 10–12.) The Magistrate Judge granted the United States's application and issued an order pursuant to § 2703(c) requiring the service providers to disclose the information the United States requested. (Dkt. 27-1 at 15–18.)

### A. Necessity of a Search Warrant

In his motion to suppress, Defendant argues that "[t]he collection of the cell tower dumps was a Fourth Amendment search necessitating a warrant." (Dkt. 25 at 3.) Specifically, he relied on the Supreme Court's decision in *Carpenter v. United States*, arguing that because "a search of

cell site location information . . . regarding one person is a search covered by the Fourth Amendment and as such requires a warrant," a cell tower dump that "affect[s] the rights of hundreds of innocent people, if not thousands, should require the same protections." (*Id.* (citing 138 S. Ct. 2206, 2223 (2018).)  The Magistrate Judge disagreed, concluding "the information obtained from a tower dump does not contain the type of precise location-tracking data that the Supreme Court held in *Carpenter* is subject to an individual's legitimate expectation of privacy." (Dkt. 33 at 9.)  Defendant objects, contending "the intrusion presented by a cell tower dump is greater than that presented in *Carpenter*, because the [United States] is knowingly collecting the data of . . . an unknown number of innocent Americans." (Dkt. 37 at 2–3.)

"[L]ong-standing Supreme Court precedent holds that a person has no protected privacy interest in records of telephone [numbers] dialed." *United States v. Rhodes*, 2020 WL 9461131, at *3 (N.D. Ga. June 18, 2020) (citing *Smith v. Maryland*, 442 U.S. 735, 745–46 (1979)).  Nor does law enforcement need a "warrant to obtain" records that "merely provide the subscriber (and possible user) of a cell phone." *United States v. Jenkins*, 2019 WL 1568154, at *2 (N.D. Ga. Apr. 11, 2019) (citing *Rehberg*

8

*v. Paulk*, 611 F.3d 828, 843 (11th Cir. 2010)). Indeed, the Supreme Court has blessed the warrantless seizure of data from "[a] surveillance camera," which "might reveal data about the location of 'hundreds of thousands of innocent passersby' like the tower dumps at issue here." *Rhodes*, 2020 WL 9461131, at *2.

Defendant's reliance on *Carpenter* does not change the analysis. In *Carpenter*, the United States obtained cell-site data for a particular phone number, thus allowing the United States to track the location of the phone (and its user) for more than four months. 138 S. Ct. at 2212. All told, the United States obtained 12,898 location points cataloging the user's movements over time—an average of 101 data points per day. *Id*. The Supreme Court held the constitution requires the United States to seek a search warrant before obtaining "historical cell phone records that provide a comprehensive chronicle of the user's past movements." *Id*. at 2211. It explained the data the United States obtained amounted to a search under the Fourth Amendment because it provided an "all-encompassing record" of the user's whereabouts—"revealing not only his particular movements, but through them his familial, political, professional, religious, and sexual associations." *Id*. at 2217 (internal

9

quotation marks and citation omitted).

The Supreme Court noted the kind of cell-site information it was dealing with in *Carpenter* "tracks nearly exactly the movements of [the phone's] owner," and held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through [cell-site location information]." *Id.* at 2217–18. And it described its opinion as "a narrow one," expressly declining to "express a view" on "'tower dumps' (a download of information on all the devices that connected to a particular cell site during a particular interval)." *Id.* at 2220; *see also United States v. Adkinson*, 916 F.3d 605, 611 (7th Cir. 2019) (noting *Carpenter* "did not invalidate warrantless tower dumps (which identified phones near *one location* (the victim stores) at *one time* (during the robberies)) because the Supreme Court declined to rule that these dumps were searches requiring warrants") (emphasis in original).

The information the United States obtained in this case does not present the Fourth Amendment concerns like those at issue in *Carpenter*. *Rhodes*, 2020 WL 9461131, at *3. It does not involve the type of precise and expansive location-tracking data the Supreme Court held in *Carpenter* is subject to an individual's legitimate expectation of privacy.

*See Rhodes*, 2020 WL 9461131, at *3 (noting tower dump information is "necessarily limited by the physical location of each particular tower" and does not track a person's movements "over an extended period of time"). As the Magistrate Judge concluded, "the rationale for finding a Fourth Amendment search in *Carpenter*—where the Court's concern centered around data that enabled the government to track a person over a lengthy period—does not apply to the single-moment-in-time information obtained from the tower dumps in this case." (Dkt. 33 at 10.)

As for Defendant's argument that his privacy interest in the tower dump information *exceeds* that identified in *Carpenter*, the Magistrate Judge was also correct in finding that "[n]othing in *Carpenter* suggests that collecting information related to a number of phones, all present at a particular location at a particular time, implicates a search for purposes of the Fourth Amendment." (Dkt. 33 at 11.) As already explained, *Carpenter* did not "call into question conventional surveillance techniques and tools, such as security cameras" or "other business records that might incidentally reveal location information." 138 S. Ct. at 2220. This includes those that "might reveal data about the location of 'hundreds of thousands of innocent passersby' like the tower dumps at

11

issue here." *Rhodes*, 2020 WL 9461131, at *2. *Carpenter* did not invalidate the warrantless collection of that kind of data. It focused narrowly on the United States's ability to track the precise movements of a person over a lengthy period of time. "Because the information obtained by the [United States] in this case does not implicate the kinds of privacy concerns present in *Carpenter*, and because Defendant cites no other binding authority holding that a warrantless dump violates the Fourth Amendment, the Court concludes that the § 2703(d) Order was a valid mechanism for the [United States] to obtain the information at issue." *Id.* at *3.

### B. Scope of the § 2703(d) Order

Defendant also argues that regardless of whether the United States needed a warrant to obtain the cell tower data, "[i]n its application for the cell tower dumps, the [United States] failed to provide any nexus between the robber and the crimes," such that the § 2703(d) order approving the application was "overbroad." (Dkt. 25 at 5.) The Magistrate Judge concluded the § 2703(d) order was not overbroad because the United States's application "set[] forth the facts of the robberies in detail, all of which reasonably suggest that a particular

12

person may have been responsible for all (or at least some) of the crimes." (Dkt. 33 at 13.) Defendant objects, saying "[t]he [United States] was able to obtain private cell tower data without so much as one piece of evidence, one witness statement, or even one hint that the armed robber(s) used/possessed a cell phone during the commission of these crimes." (Dkt. 37 at 3.)

As already explained, the statute requires only "specific and articulable facts showing that there are *reasonable grounds* to believe" cell records "are *relevant and material* to an ongoing criminal investigation." 18 U.S.C. § 2703(d) (emphasis added). Nothing in the statute suggests it requires the United States to definitively show a perpetrator had a phone—or even that a phone was present at the scene—before it can obtain a tower-dump order. *See Rhodes*, 2020 WL 9461131, at *3. And Defendant does not cite any legal authority holding otherwise. The United States's application explained it was likely the perpetrator was present at the scene of the robberies, that such person was carrying a phone, and thus, the cell tower information would assist the FBI in identifying a common phone present at some or all of the robberies. (Dkt. 27-1 at 10.) As the Supreme Court has recognized, cell

13

phones are now a "pervasive and insistent part of daily life," and "carrying one is indispensable to participation in modern society." *Carpenter*, 138 S. Ct. at 2220 (internal quotation marks omitted). It is hardly a stretch, then, to conclude the application's assertion that the perpetrator likely had a cell phone on him provided "reasonable grounds" the information would be relevant to the FBI's investigation. And given the application's level of factual detail, it was more than sufficient to support the § 2703(d) order.

### C.   Good-Faith Exception

Finally, the Magistrate Judge concluded "[e]ven if a search warrant was required, or even if the [§ 2703(d)] order was otherwise deficient, Defendant would not be entitled to have the information suppressed because the [United States] relied on the Court's order in good faith." (Dkt. 33 at 15.) Defendant objects, saying the United States "would have been aware of *Carpenter* just as it would have been aware that it had nowhere near sufficient evidence to support a search warrant." (Dkt. 37 at 4.) So, according to Defendant, it did not and could not have "rel[ied] on the [§ 2703(d)] order in good faith." (*Id.*)

In *United States v. Leon*, the Supreme Court held that a court

14

should not exclude evidence "obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *United States v. Leon*, 468 U.S. 897, 900 (1984). This good-faith exception applies in all but four circumstances: (1) where the magistrate was misled by information in a warrant application the applicant knew was false or would have known but for reckless disregard for the truth; (2) where the magistrate "wholly abandoned" his or her judicial role; (3) where the affidavit supporting the application was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) where the warrant was "so facially deficient" that officers couldn't have reasonably presumed it to be valid. *United States v. Taylor*, 935 F.3d 1279, 1291 (11th Cir. 2019) (internal quotation marks and citation omitted).

The rule in *Leon* has "been extended to situations where officers are called upon to interpret or rely upon an external source of authority such as a statute, which later turns out to be invalid or not to authorize the action taken." *United States v. Gonzales*, 969 F.2d 999, 1004 n.7 (11th Cir. 1992). In fact, the Eleventh Circuit has applied *Leon* in the context

15

of cell-site records the United States obtained pursuant to an order under 18 U.S.C. § 2703(d) that, after *Carpenter*, it should have procured with a search warrant. *United States v. Joyner*, 899 F.3d 1199, 1204–05 (11th Cir. 2018).

Here, even if the United States was required to obtain the cell dump information using a warrant, and even if the § 2703(d) order was deficient, the Court would still not suppress that evidence because the United States obtained it in good-faith reliance on the order. There is nothing to suggest—and Defendant does not really seem to argue—that any of the four exceptions to *Leon* apply. While Defendant says in conclusory fashion that "[t]he [United States] could not have believed that their mere hunch that a cell phone was involved, without more, was sufficient for a court order," the Court already held that it reasonably relied on the assumption that the perpetrator—like most everyone nowadays—had a cell phone on him at the time of the robberies. The Court declines to exclude the cell dump information.

### IV. Conclusion

The Court **OVERRULES** Defendant's Objections (Dkt. 37) and **ADOPTS** the Magistrate Judge's R&R (Dkt. 33). The Court **DENIES**

Defendant's Motion to Dismiss Counts 2, 4, 6, 8, 10, 12, & 14 (Dkt. 23) and Motion to Suppress Evidence Obtained From Cell Tower Dumps (Dkt. 25). The Court **DENIES AS MOOT** Defendant's Motion to Suppress Evidence From a Geofence Warrant (Dkt. 24). The Court **SETS** a status conference for March 7, 2024, at 10:00 a.m., in Courtroom 1906, Richard B. Russell Federal Building, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303. The time between the date of this Order and the status conference shall be excluded in calculating the date on which the trial of this case must commence under the Speedy Trial Act. The Court finds that the delay is for good cause and the interests of justice outweigh the right of the public and the right of the defendant to a speedy trial, pursuant to 18 U.S.C. § 3161, *et seq*.

**SO ORDERED** this 20th day of February, 2024.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

17